**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**LEVI LLOYD HARVEY,**

**Plaintiff,**

**v.** **CASE NO. 11-3136-SAC**

**CHARLTON D. LAWHORN,**
**et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

This civil rights complaint, 42 U.S.C. § 1983, was filed pro se by an inmate of the Hutchinson Correctional Facility, Hutchinson, Kansas.

**FILING FEE**

The fee for filing this civil action is $350.00. Plaintiff has not paid the fee. Nor has he filed a complete Application to Proceed Without Prepayment of Fees, that includes his affidavit, on court-approved forms.[1] Mr. Harvey has previously been forewarned that under 28 U.S.C. § 1915(b)(1), being granted leave to proceed without prepayment of fees does not relieve him of the obligation to pay the full amount of the filing fee. Instead, it entitles him to pay the fee over time through payments automatically deducted

---

[1] Plaintiff will be required to submit a complete Application to Proceed Without Prepayment of Fees with affidavit in this case, and forms will be provided. He must write the case number of this case on the first page of all pleadings or motions he submits for filing in this case. He may not write more than one case number on any pleading submitted by him or submit a single pleading for filing in more than one case.

from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).[2] He is obligated to pay the $350.00 fee for each civil case that he files in this court.

Plaintiff has submitted an Inmate Account Statement as statutorily mandated (Doc. 2). Pursuant to 28 U.S.C. § 1915(b)(1), the court is required to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account over that period was $44.57, and the average monthly balance was $14.43. The court therefore assesses an initial partial filing fee in this case of $8.50, twenty percent of the average monthly deposit, rounded to the lower half dollar. Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court. His failure to submit a complete motion and the initial fee in the time allotted may result in dismissal of this action without further notice.

**SCREENING**

Because Mr. Harvey is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any

[2] Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is currently confined will be authorized to collect, in connection with each action he files, twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed for the following reasons.

**FAILURE TO ADEQUATELY STATE CLAIMS AND SUPPORTING FACTS**

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937 (2009), the United States Supreme Court held that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949 (quoting Bell, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The court accepts all well-pleaded allegations in the complaint as true. See

Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. Twombly, 550 U.S. at 558. The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff has not properly utilized the court-provided complaint forms to set forth his claims. Instead, he inserts many pages inside his complaint that include a "narrative" and other forms that he apparently presented to the Kansas Board of Healing Arts. He also inserts pages that are medical records and grievance materials. Other than "see attachments" under one count he does not discuss these attachments and relate them to his claims.

He does not state constitutional claims in the spaces provided for counts. The only counts specified in the complaint are: (I) medical malpractice, (II) "unusual punishment" in that lack of medical treatment and surgery resulted in his ineligibility for work release program and "reprisals/adverse" actions, and (III) intentional tort of violating medical restrictions resulted in reinjury and his being housed "outside (his) security classification." Nor does plaintiff specify which factual allegations of the many in his attachments are offered to support

each count. His attachments contain many allegations that do not appear relevant to any of his three counts.[3] Thus, it is very difficult to discern what constitutional claims Mr. Harvey asserts and what facts he believes support each of those claims.

Very liberally construing the materials filed, plaintiff appears to allege the following factual background as the basis for the three counts in his complaint. In April 2010, he was injured during a job assignment at the Larned Correctional Mental Health Facility (LCMHF), and Dr. Stanton diagnosed him with an umbilical hernia. Dr. Stanton recommended that plaintiff have surgery and that the injury be "treated as a work-comp issue" because the "injury occurred during a job assignment for KDOC." However, Nurse Carr informed plaintiff that defendant Dr. Lawhorn had approved him for a second opinion from a physician with more expertise in the area. Defendant Dr. Larry Bumguardner examined plaintiff and found that plaintiff's hernia "did not pose an emergency" because it "was not strangulated" or herniated. Plaintiff requested an "independent opinion" as to proper treatment for his hernia, which was denied.[4] Plaintiff has taken 3000 mg of Acetaminophen daily since the injury, which can cause damage to organs, because he needs treatment for discomfort.

In December 2010, "S. Suro CCI" placed plaintiff in a cell

---

[3] For example, plaintiff's allegations in his narrative concerning events during his arrest are not shown to be relevant to his counts, or to state any sort of claim under 42 U.S.C. § 1983.

[4] <u>See</u> <u>Ledoux v. Davies</u>, 961 F.2d 1536, 1537 (10th Cir. 1992)(Plaintiff's contention that he was denied treatment by a specialist is insufficient to establish a constitutional violation.).

with only a top bunk available, which was a violation of medical restrictions ordered by Dr. Bumguardner. Plaintiff's hernia became inflamed due to his having to get up and down from the top bunk. In January 2011, Nurse Practitioner (NP) Dennis Goff denied plaintiff treatment for his inflamed hernia. In June 2011, Goff ignored the 15-pound lifting restriction that Dr. Bumguardner had ordered for plaintiff, by telling CSI Hurt that it was not a violation of plaintiff's medical restrictions to require him to push laundry carts weighing 50 to 100 pounds. Plaintiff exhibits a "Formal Written Warning/Reprimand" that he received from Hurt advising him that "when you refuse to push laundry carts down the hallway you are violating work performance," and that "PA Goff . . . verified this would not violate medical rest."

In May 2010, Nurse Carr examined a large, painful bump on plaintiff's wrist, diagnosed it as an insect bite, and treated it with antibiotics. Plaintiff noticed other inmates with the same infection and asked Nurse Carr to culture his bump, but she denied his request. Dr. Bumguardner also examined plaintiff's wrist, and stated it "was more likely" MRSA, requiring cultures and quarantine to prevent spreading. Others at the LCMHF had MRSA. In April 2011, Nurse Miller improperly cleared him for kitchen duty when plaintiff had sores on his face and hands. A few days later, NP Ms. Randall diagnosed the sores on his face and hands as a skin infection and treated him with extra strength Bactrim. A month later NP Durant and NP Goff would not treat plaintiff for the recurring skin infection. Goff denied treatment because plaintiff

had complained about him not following doctors orders. On June 22, 2011, plaintiff's skin condition was still not being treated. Plaintiff exhibits a "Grievance-Response on Appeal" from the Office of the Secretary of Corrections, which indicates that KDOC's "Physician Contract Monitor Consultant" reviewed plaintiff's case and found that Mr. Harvey was treated for a skin infection that healed with Bactrim; was later seen for a rash on his face and hand and provided Bactrim; was seen again several times in May and June, 2010, was educated in good hygiene,"does not have MRSA," and was told he did not require antibiotic treatment.

In January 2011, Mr. Cranston, Mental Health Therapist for Correct Care Solutions (CCS) recommended group therapy for plaintiff due to his "stress related symptoms caused by conditions of incarceration." "KDOC did not make" this therapy available to plaintiff until May 4, 2011.

In plaintiff's Request for Relief, he states that his current release date is December 7, 2011, and that he does not "opt to have corrective surgery during incarceration" but "chooses instead to have corrective surgery once released." He also states that he will need housing until he is fully recovered and obtains gainful employment, and will need "some sort of temporary disability compensation for support." In addition, he seeks compensation "for the conditions of incarceration, pain and suffering, and "some sort of earnings" for the time he could have earned wages in a work release program.

**PERSONAL PARTICIPATION OF NAMED DEFENDANTS**

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). As the U.S. Supreme Court recently reiterated in Iqbal, 129 S.Ct. at 1948:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. (citations omitted). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Id.

In the caption, plaintiff names only two defendants: Charlton Lawhorn, Regional Medical Director, Kansas Department of Corrections (KDOC); and Larry Bumguardner, DO. The only personal action of defendant Lawhorn described in the complaint is his approval of a second medical opinion as to plaintiff's need for immediate hernia surgery. This action is not shown to have violated any federal constitutional right. Defendant Lawhorn is not alleged to have denied or delayed treatment to Mr. Harvey for

his hernia or for any other medical problem, or to have participated in any way in the violation of medical restrictions. Nor is he alleged to have been involved in changes in plaintiff's custody classification or other adverse actions and punishments. The court finds that plaintiff has failed to adequately allege that defendant Lawhorn "through [his] own individual actions, has violated the Constitution." Williams v. Sirmon, 350 Fed.Appx. 294, 299 (10th Cir. 2009)(unpublished)[5](citing see id. at 1948).

The only other defendant named is Dr. Bumguardner. Again, plaintiff does not allege that this defendant participated in any violation of medical restrictions, changes in custody classification, or other alleged adverse actions and punishments. The only acts described as taken by Dr. Bumguardner are that he examined plaintiff and determined that his hernia did not pose an emergency. The court finds that plaintiff has not alleged sufficient facts showing the personal participation of defendant Lawhorn in any complained-of acts, other than denial of surgery for his hernia.

Plaintiff mentions other persons in his complaint, but has not properly designated any of them as defendants. Rule 10 of the Federal Rules of Civil Procedure require that all parties be named in the caption.[6] If Mr. Harvey intends to name defendants other

[5] Unpublished decisions cited herein are not binding precedent, and are cited for as persuasive authority only. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

[6] Plaintiff's attachment to the inside of his complaint of a copy of a grievance directed to the Board of Healing Arts which lists practitioners and witnesses does not satisfy this rule. It is an elementary requirement that

than the two in the caption, he must file a response to this order in which he clearly lists every defendant he sues in this action. He also must list the employment of each defendant as required by the form. If a person is a witness and not a defendant, he or she should not be listed. Names of witnesses need not be provided at this time. Plaintiff is cautioned that if he has not described acts in the complaint by each person he names as a defendant, this action will be dismissed as against that defendant for failure to allege facts showing his or her personal participation.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

42 U.S.C. § 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege denial of medical treatment or some other wrong. Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion in cases covered by § 1997e(a) is not within the court's discretion, but is mandatory. "[E]xhaustion requirements are designed to . . . give the agency a fair and full opportunity to adjudicate their claims." Woodford v. Ngo, 548 U.S. 81, 90 (2006).

plaintiff properly designate as a defendant each person from whom he seeks relief.

Full and proper exhaustion of administrative remedies is required, and entails utilizing “all steps that the agency makes available, and doing so *properly* (so that the agency addresses the issues on the merits).” Id. at 90. The grievance procedure for Kansas state prisoners is established in administrative regulations. See Kan. Admin. Regs. §§ 44-15-101 through 106. Section 44-15-102 creates a three-step process which requires a prisoner to “first seek information, advice, or help on any matter from [his] unit team.” Id. § 44-15-102(a)(1). If the prisoner is not satisfied after step one, he may submit “an inmate grievance report form . . . to a staff member for transmittal to the warden.” Id. § 44-15-102(b). Finally, if the prisoner remains unsatisfied with the warden’s resolution of his grievance, he may appeal the matter to the Secretary of Corrections “by indicating on the grievance appeal form exactly what [he] is displeased with and what action [he] believes the secretary should take.” Id. § 44-15-102(c)(1). “To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient.” Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007). Unexhausted claims must be dismissed. Jones v. Bock, 549 U.S. 199, 223-24 (2007).

The failure to exhaust administrative remedies is an affirmative defense. Jones, 549 U.S. at 203. This means that a prison inmate is not required “to allege and demonstrate exhaustion in his complaint.” Id. Consequently, the question of exhaustion generally does not arise until it is raised by a defendant.

However, the Tenth Circuit has held that

> if a complaint makes it clear through the prisoner's affirmative statements he has not exhausted his administrative remedies, the district court may raise the exhaustion question sua sponte provided it seeks additional information from the prisoner.

Escobar v. Reid, 240 Fed.Appx. 782, 784 (10th Cir. 2007)(unpublished)(citing see Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see also Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006).

In response to the question on his form complaint as to whether he previously sought administrative relief from the appropriate officials, Mr. Harvey marked "no." He then explained that he has written letters to several "state/federal health agencies," and government officials. He also alleges that he submitted "several grievances" to the Secretary of Corrections (SOC), defendant Dr. Lawhorn, and to "CCS Mental Health Staff." Writing letters to the SOC and other agencies or officials, without following the three-steps in the prison administrative grievance process, does not amount to proper exhaustion. The court finds that it is apparent from allegations in the complaint that Mr. Harvey did not fully and properly exhaust the available prison administrative remedies on each of his claims before filing this lawsuit.

Plaintiff shall be given time to allege facts or provide exhibits showing that he followed each of the steps set forth in the Kansas regulations in a timely and proper manner. He must show

that he properly followed the three-step exhaustion process on each of his claims including that he has been denied necessary surgery and treatment for his hernia, that he was denied proper treatment for MRSA or an infection, that his medical restrictions have been violated, as well as any other constitutional issues he intends to pursue in this complaint. Plaintiff's § 1983 complaint is subject to being dismissed without prejudice pursuant to 28 U.S.C. §§ 1915A, 1915(e)(2)(B)(ii), and 42 U.S.C. § 1997e(c)(1) for failure to exhaust available administrative remedies prior to filing this action. Accordingly, if plaintiff fails to demonstrate full and proper exhaustion within the time allotted, this action may be dismissed without further notice.

**FAILURE TO STATE A CLAIM**

Mr. Harvey's complaint is also subject to being dismissed for failure to state a federal constitutional claim. "To state a claim under (42 U.S.C. §) 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988)(citations omitted); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992).

Plaintiff's first count is Medical Malpractice. It is well-settled that medical malpractice, even against a prison inmate, does not amount to a federal constitutional violation and is therefore not sufficient to state a claim for relief in federal

court under § 1983.[7] Malpractice is a tort claim to be litigated in state court. Plaintiff's allegations against defendant Bumguardner, that he examined plaintiff and exercised his medical judgment to find that emergency surgery was not necessary, taken as true, amount to nothing more than a claim of malpractice. Plaintiff's own allegations and attached exhibits indicate that one prison physician recommended that he have surgery, but another prison physician, with more expertise, provided a second opinion that surgery was not necessary. These allegations fail to state an Eighth Amendment violation because plaintiff's condition was not ignored but was diagnosed by two physicians, and the physicians exercised their professional judgment regarding the necessary treatment.[8] Plaintiff does not provide facts showing that surgery for his hernia is immediately necessary, and even states that he does seek to have the surgery until after he is released from prison. The court finds that the allegations against defendant Bumguardner are subject to being dismissed for failure to state a

---

[7] The United States Supreme Court has explained:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)(footnote omitted).

[8] Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints.").

claim of denial of medical treatment in violation of the cruel and unusual punishment clause of the Eighth Amendment.[9]

Plaintiff's count II regarding his ineligibility for the work release program, his change in custody classifications, and other adverse actions or punishments is not supported with facts showing that either named defendant was personally involved in any of these matters. Even if plaintiff named as defendants those persons involved in such decisions he has no federal constitutional right to participate in a work release program or to a certain custody classification. Likewise, any claim plaintiff may have regarding disciplinary actions taken against him does not amount to a federal constitutional violation, unless he was sanctioned with loss of good time. Moreover, claims for damages based upon disciplinary proceedings are premature unless and until the finding of guilt has actually been overturned on administrative appeal or by some other appropriate means. Accordingly, the court finds that count II of the complaint fails to state a claim.

---

[9] The U.S. Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991); Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005); Boyett v. County of Washington, 282 Fed.Appx. 667, 672 (10th Cir. 2008)(citing Self v. Crum, 439 F.3d 1227, 1230-31 (10th Cir. 2006)). Under the subjective analysis, a prison official does not violate the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Boyett, 282 Fed.Appx. At 672)(citing Self, 439 F.3d at 1231)(quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Wilson v. Seiter, 501 U.S. 294, 297 (1991).

Plaintiff's allegations in Count III of violations of his medical restrictions are not supported with facts showing that either named defendant was personally involved. Furthermore, plaintiff may not combine claims in a single complaint that are based upon different actions taken at different times by different individuals.[10] Plaintiff does not allege any connection between violation of his bunk and weight lifting restrictions and any claims he may have against defendant Lawhorn and defendant Bumguarden. Accordingly, the court finds that these claims and plaintiff's claims in Count II are improperly joined in this action against the two named defendants.

Plaintiff's claim that he suffered a work-related injury

---

[10] FRCP Rule 20(a)(2) governs permissive joinder of defendants and pertinently provides:

> (2) Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Id. FRCP Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." Zhu v. Countrywide Realty Co., Inc., 160 F.Supp.2d 1210, 1225 (D.Kan. 2001)(citation omitted).

The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in FRCP Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." Id. It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act. Id. (FRCP Rule 18(a) ensures "that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." Id.

while in prison and his theory that he can opt out of surgery while incarcerated but be compensated for lost wages and future medical needs[11] after his release, are not supported by sufficient facts or legal authority. Plaintiff does not allege the dates, circumstances, and location of his alleged work-related injury or provide the names and describe the acts of those persons who were deliberately indifferent in causing this injury. He does not even seek damages as a direct result of the alleged work-related injury. He does not allege any facts to show that either named defendant was involved in events that led to his injury. In order to state an Eighth Amendment violation and recover damages based on a work-related injury, plaintiff must name as defendants the persons that caused the injury and allege facts demonstrating that each defendant "acted with deliberate indifference - that is that he or she both knew of and disregarded an excessive risk to inmate health or safety." See Smith v. U.S., 561 F.3d 1090, 1104-05 (10th Cir. 2009). Mere negligence as to plaintiff's safety is insufficient. Farmer, 511 U.S. at 838 ("Deliberate indifference entails something more than mere negligence.")(citing Estelle, 429 U.S. at 104.

Plaintiff's allegations that treatment for a skin condition and his involvement in group therapy were delayed, without more, are not sufficient to state a claim of cruel and unusual punishment or other federal constitutional violation. Olson v. Stotts, 9 F.3d 1475 (10th Cir. 1993)(A delay in providing medical care does not

[11] Tort remedies, if any, that might be provided under state law must be pursued in state court.

violate the Eighth Amendment unless there has been deliberate indifference resulting in substantial harm.); Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001)(In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires that the inmate suffer "substantial harm" as a result of the delay.).

The court concludes for the foregoing reasons that plaintiff has failed to allege sufficient facts to support a federal constitutional claim. Plaintiff will be given time to show cause why this action should not be dismissed for the reasons stated in this Memorandum and Order.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit a properly completed Application to Proceed Without Prepayment of Fees upon court-provided forms.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff must submit to the court an initial partial filing fee of $ 8.50. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to file a Response to this Memorandum and Order, which includes (1) a clear list of any defendants not already named in the caption of his complaint as directed, (2) a

showing that he has properly exhausted all available prison administrative remedies on each of his claims, and (3) a showing of cause as to why this action should not be dismissed for the reasons stated in this Memorandum and Order.

The clerk is directed to send plaintiff IFP forms.

**IT IS SO ORDERED.**

Dated this 9th day of September, 2011, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge